Opinion issued October 9, 2003



















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-01110-CR
____________
 
ANTHONY RAY SCOTT, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 892821
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Anthony Ray Scott, guilty of burglary of a habitation



and assessed his punishment at confinement for 20 years and a $10,000 fine. In two
points of error, appellant contends that the evidence was legally and factually
insufficient to support his conviction because the State did not corroborate the
testimony of an accomplice witness.
          We affirm.
Facts
          Harris County Sheriff’s Deputy D. E. Vance testified that, while on patrol on
the afternoon of November 2, 2001, he received a dispatch call concerning a burglary. 
As Deputy Vance approached the subdivision where the burglary was reported to
have occurred, he was “flagged down” by a passing citizen, Kenneth Grant.
          Kenneth Grant testified that, as he was leaving his apartment, he saw a tall,
black man “kind of rushing” out of a nearby alley. Grant explained that the man was
wearing a light blue “windbreaker type jump suit” and appeared to be “trying to hold
something up . . . like under his shirt.” As Grant watched, a small, red Ford, driven
by a second man, “rolled” through a stop sign and almost hit the man, and the man
then got into the passenger side of the car. Grant testified that, at approximately the
same time that he saw the man get into the red Ford, he also heard an alarm sounding. 
As Grant was driving out of the subdivision, he saw Deputy Vance’s patrol truck,
motioned to Vance, described what he had seen, and told him, “You might want to
take a look there [sic] something going on with the red car.”
          Based on what Grant had told him, Deputy Vance positioned his patrol truck
at the entrance to the subdivision and waited for a red car. Several minutes later,
Vance saw two black men in a red car traveling “at a fast rate of speed.” Vance
testified that the men inside the car appeared “real nervous” and the red car failed to
stop at a stop sign. Vance then activated the emergency lights of his patrol truck and
stopped the red car.
          When Deputy Vance approached the red car, he saw a television, covered by
a towel, in the rear seat. Vance ordered the two men in the car to place their hands
on the dashboard, and he noticed that the men were “sweating profusely.” Vance then
ordered the driver to get out of the car, and after the man did so, Vance saw a
screwdriver on the floorboard of the car under the driver’s seat.
          Deputy Vance then placed the driver, who was later identified as Derrick
Ellison, in the rear seat of Vance’s patrol truck. Upon questioning by Vance, Ellison
stated that he did not know who owned the red car he had been driving or the
television in its rear seat. Ellison also told Vance that he was a City of Houston
health inspector, but could not explain why he was in the subdivision, which is
located outside of the city limits of Houston. Deputy Vance then questioned the
passenger of the red car, later identified as appellant. Vance testified that appellant
was also unable to explain who owned the television in the red car.
          Harris County Deputy C. Darlow was dispatched to the scene, and assisted
Vance in questioning appellant and Ellison. Darlow noticed that appellant was
wearing a “sweat suit.” When Darlow questioned Ellison about the television, Ellison
told him that it was Ellison’s and that appellant was helping him move.
          Deputy Vance then arrested Ellison for failing to stop at a stop sign, and Vance
and Darlow conducted an inventory search of the red car. Inside the car, the deputies
found some gloves and a store receipt indicating that the gloves had been purchased
that day. When the deputies opened the trunk of the car, they found and seized “an
abundance” of items including jewelry, cameras, video cameras, and silverware. 
Appellant was then taken to a police substation for further investigation of the
reported burglary, and Ellison indicated to Darlow that he wished to cooperate in the
investigation.
          Kenneth Grant explained that, sometime after he told Deputy Vance what he
had seen, he “got nosy” and drove slowly past the location where Vance had stopped
the red car, saw the deputies removing items from the trunk, and recognized the car
as the one he had seen earlier. Grant then stopped and gave the deputies his name and
information.
          At approximately the same time, other Harris County Sheriff’s deputies were
investigating the previously reported burglary at a house in the subdivision. Deputy
Darlow took Ellison to the house that had been burglarized, where Darlow saw that
the front door of the house appeared to have been “kicked in.” The owners of the
house were not home, so Darlow left a case card and closed the back door. Darlow
then took Ellison to the station, where Ellison gave a written statement.



          Derrick Ellison testified that, in November 2001, he was employed as a senior
public health inspector for the City of Houston. Ellison admitted that, prior to his
testimony, he entered a plea of guilty to the offense of burglary of a habitation in
connection with his involvement in the events of this case. Ellison testified that he
had known appellant for approximately five years and that, on the day of the burglary,
appellant telephoned Ellison and asked him to “take a ride” to “pick up some
merchandi[s]e.” Ellison stated that he did not know whether appellant’s comment
meant that they would obtain property legally or illegally.
          Ellison drove to appellant’s home and picked up appellant in a red, Ford Focus
that Ellison had borrowed from a relative, and appellant directed Ellison to a
residential neighborhood. At the entrance to the neighborhood, appellant told Ellison
to let him out of the car, and Ellison did so. Appellant subsequently called Ellison
on his cell phone and told Ellison he was ready to be picked up. Ellison then picked
up appellant at the same place where he had dropped appellant off, and appellant
placed some items in the trunk of the car, out of Ellison’s view. Ellison did not know
what appellant placed in the trunk and could not remember whether appellant placed
the television in the trunk or rear seat of the car. Although Ellison testified that he
did not see appellant break into a house, he admitted that he “had an idea” that
appellant intended to do so. Ellison also admitted that the items appellant placed in
the car did not belong to Ellison, and Ellison thought the items were not appellant’s.
          After Deputy Vance stopped Ellison and appellant, Ellison initially told Vance
that he worked for the City of Houston and “was investigating someone,” but later
gave the written statement admitting to his involvement. Appellant testified that the
screwdriver found in the car was his, but he did not know where the gloves came
from and did not buy them.
          James McElravy testified that, when he arrived home from work that evening,
he found his clothes and other belongings strewn about the house. McElravy testified
that he found the card left by Deputy Darlow, contacted Darlow, and identified
himself as the owner of the burglarized house. McElravy and his wife later met with
Darlow at the station and identified property found in the red car as having been taken
from their house. The items taken from their house and recovered from the red car
included two cameras, a video camera, a coin collection, several watches, jewelry, a
set of silverware, and a television. McElravy testified that neither he nor his wife
gave anyone permission to enter or remove anything from their house that day.
Accomplice Witness Testimony
          In his two points of error, appellant argues that the evidence was legally and
factually insufficient to support his conviction because the State failed to corroborate
the testimony of Ellison, an accomplice witness.
          With regard to accomplice witness testimony, the Texas Code of Criminal
Procedure provides as follows:
A conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with
the offense committed; and the corroboration is not sufficient if it
merely shows the commission of the offense.

Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979).
          Texas courts have held that it is not necessary that corroborating evidence
directly connect a defendant to a crime, or that it be sufficient by itself to establish
guilt; it need only tend to connect the defendant to the offense. Cathey v. State, 992
S.W.2d 460, 462 (Tex. Crim. App. 1999). “If the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, the requirement
of Article 38.14 has been fulfilled.” Id. If the State fails to offer evidence
sufficiently corroborating the accomplice witness evidence when required to do so,
a defendant must be acquitted. Id. at 463 n.2.
          Appellant argues that “removing Ellison’s testimony from the record, the jury
was left simply with the appellant’s presence in the automobile after the alleged
offense.” Here, however, the non-accomplice evidence established that: (1) Grant
saw a man, who was wearing a “windbreaker type jump suit” and appeared to be
carrying something under his shirt, “rush” out of an alley and get into a small, red car;
(2) at the same time, Grant heard an alarm sounding; (3) acting, in part, on Grant’s
advice, Deputy Vance stopped a small, red car and noticed that appellant and Ellison
were sweating “profusely”; (4) Vance saw a television in the rear seat of the car,
covered by a towel; (5) Deputy Darlow recalled that appellant was wearing a “sweat
suit”; (6) when deputies questioned appellant and Ellison about the television, they
gave conflicting stories concerning who owned it; (7) Grant recognized the car
stopped by the deputies as the car he had seen earlier; (8) when deputies conducted
an inventory search of the car, they found and seized “an abundance” of items
including jewelry, cameras, video cameras, and silverware; and (9) McElravy testified
that many of the items found in the car belonged to him and had been stolen from his
house that day.
          We hold that, taken together, this evidence tended to connect appellant with the
burglary of McElravy’s house and was therefore sufficient to corroborate Ellison’s
testimony.
          As noted above, in his challenge to the corroboration of the accomplice
evidence, appellant argues that the evidence was legally and factually insufficient. 
However, the “accomplice witness rule” is a statutorily imposed sufficiency review
and is not derived from federal or state constitutional principles that define the legal
and factual sufficiency standards. Id. at 462-63. Thus, as noted above, we need not
determine whether the non-accomplice testimony, taken alone, was sufficient to
establish appellant’s guilt, and we decline to review the sufficiency of the non-accomplice evidence under such standards.
          We overrule appellant’s first and second points of error.
Conclusion
          We affirm the judgment of the trial court.
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Taft, Jennings, and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).